UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

PHILEMONE FILS-AMIE,

                            Petitioner,       **REPORT AND RECOMMENDATION**

- against -

                                                      03 Civ. 0939 (JSR) (RLE)

BRIAN S. FISCHER, SUPERINTENDENT,

                            Respondent.

------------------------------------------------------------

**To the HONORABLE JED S. RAKOFF, U.S.D.J.:**

### I. INTRODUCTION

*Pro se* petitioner, Philemone Fils-Amie ("Fils-Amie"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on June 24, 1999, in New York State Supreme Court, New York County. Fils-Amie was convicted of murder in the second degree, and sentenced to an indeterminate term of twenty years to life. He is currently incarcerated at Sing Sing Correctional Facility in Ossining, New York.

Fils-Amie challenges his conviction on the grounds that it was based on legally insufficient evidence. He maintains that his conduct does not support an intention to cause death, and that the evidence is consistent with an inference that he intended, at most, to injure the victim. For the reasons set forth below, I recommend that Fils-Amie's writ of habeas corpus be **DENIED.**

## II. BACKGROUND

**A.     Factual Background**

Fils-Amie, a music producer, and three colleagues joined several others for a recording session at Platinum Island Recording Studio in Manhattan on June 16, 1996. *See* Trial Transcript ("Tr.") at 315-16. Michael Shinn ("Shinn"), a producer working at the recording studio, was using a machine to record instrumental accompaniment to vocals when Fils-Amie asked to use it. Tr. at 15. After continuing to press Shinn for the machine, the two verbally argued, and Fils-Amie struck Shinn in the face. A physical altercation ensued in the recording studio, in which Shinn overpowered Fils-Amie. Tr. at 18-19. Two companions then escorted Fils-Amie out of the recording studio and into his car. Fils-Amie drove his last companion home at approximately 2:00 a.m. Tr. at 249-51. In the early morning of June 17, 1996, he telephoned a friend for money, Tr. at 275, and visited Dwaine Battle ("Battle"). Tr. at 286. He told Battle about the altercation at the recording studio, and asked if he had something "to handle his business with." Tr. at 287-88. Battle told Fils-Amie to wait until morning. Fils-Amie went to his apartment in Irvington, New Jersey, where he told Jamillan Campbell ("Campbell") that he was returning to New York to finish some business. Tr. at 434. He asked Campbell for gas money. Campbell, who was half-asleep, then heard Fils-Amie searching the kitchen cabinets. Tr. at 434.

At approximately 5:00 a.m., Shinn and two colleagues left the recording studio and went to a garage. Tr. at 21-23. Fils-Amie appeared at the garage, offering to apologize to Shinn. Shinn

agreed to speak with him, and Fils-Amie asked Shinn to walk away from the others so they could talk. Tr. at 255. As Shinn walked in front, Fils-Amie took out a knife and stabbed him in the back. Tr. at 24. Fils-Amie ran, and one of Shinn's companions briefly pursued him. Shinn pulled the knife from his back, collapsed, and became unresponsive. Tr. at 25-27, 76. He was taken to the hospital, where he immediately had surgery. The injury, close to Shinn's heart, had pierced his back muscles, lung and nicked a rib cage. He died during surgery. Tr. at 411-20.

Fils-Amie returned to his apartment at approximately 6:00 a.m. Tr. at 435. Battle went to the apartment between 7:30 and 8:00 a.m., but Fils-Amie was no longer there, and a window to the fire escape was open. Tr. at 366, 440. Battle told Campbell about the stabbing, and Campbell noticed she was missing one of four steak knives. Tr. at 442.

Fils-Amie telephoned his friend Floyd Howard ("Howard") between 10:00 and 10:30 a.m. He told Howard that he had "erased" Shinn. Tr. at 252. Howard received a subsequent telephone call confirming Shinn's death. Tr. at 253. Fils-Amie telephoned Howard again, stating that he stabbed Shinn because Shinn had attacked him when he went to apologize. Howard told him of Shinn's death. Fils-Amie again stated that Shinn attacked him. He also told Howard he would be "going down south." Tr. at 256. Fils-Amie turned himself in on June 19, 1996.

**B.    Procedural Background**

At trial, Fils-Amie raised a mental disease defense to the second degree murder charge, but was convicted and sentenced to twenty years to life imprisonment on July 8, 1999. He appealed his

conviction, claiming that 1) the evidence did not show an intention to cause death, but was consistent with an intent to injure the victim, and 2) his sentence was excessive. The Appellate Division, First Department, affirmed the conviction on February 28, 2002, finding that petitioner's homicidal intent "could be reasonably inferred from his conduct and the surrounding circumstances." **People v. Fils-Amie**, 738 N.Y.S.2d 342, 343 (App. Div. 1st Dep't 2002). The New York Court of Appeals denied Fils-Amie's application for leave to appeal on May 20, 2002. **People v. Fils-Amie**, 98 N.Y.2d 650 (2002).

### III. DISCUSSION

**A.     Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final when the time to seek direct review in the United States Supreme Court by writ of certiorari expires, that is, ninety days after the final determination by the state court. **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998)). Fils-Amie's application for leave to appeal was denied on May 20, 2002, so his petition had to be filed within one year of August 18, 2002. It was filed on February 10, 2003, and is therefore timely.

**B.     Exhaustion**

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not consider a petition for habeas corpus unless the

petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); **Picard v. Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997). The exhaustion requirement is rooted in the policy of federal-state comity to ensure that state courts "have an opportunity to consider and correct any violations of their prisoners' federal constitutional rights." **Warren v. McClellan**, 942 F. Supp. 168, 170 (S.D.N.Y. 1996) (*citing* **Picard,** 404 U.S. at 275). To satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, Fils-Amie had to inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* **Daye v. Attorney Gen.**, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). He would meet this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

**Daye**, 696 F.2d at 194. Procedurally, Fils-Amie had to utilize all avenues of appellate review within the state court system before proceeding to federal court. *See* **Bossett v. Walker**, 41 F.3d 825, 828 (2d Cir. 1994). He had to raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" **Id**. (*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990)). Because Fils-Amie raised his claim in both his direct appeal to the Appellate Division and his application for leave to appeal in the New York Court of Appeals, his claim is exhausted and reviewable by this Court.

### C.     Merits of the Claims

####     1.     Standard of Review

The AEDPA limits a federal court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. This Court should grant a writ only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if a case is decided differently "on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

####     2.     The Legal Sufficiency of the Evidence in Fils-Amie's Criminal Conviction

New York State law stipulates that an individual is guilty of second degree murder if the prosecution proves beyond a reasonable doubt that he or she acted "with intent to cause the death of another person," and caused that person's death. New York Penal Law § 125.25 (1). Fils-Amie contends that the evidence did not show an intent to cause death, but only an intent to injure, and, therefore, his second degree murder conviction was based on insufficient evidence.

6

The Court must consider the trial evidence "in the light most favorable to the prosecution," and uphold a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 319 (1979) (emphasis in original). A petitioner that challenges the legal sufficiency of the evidence in a state criminal conviction "bears a very heavy burden" because "all permissible inferences" are drawn in the government's favor. **Garbez v. Greiner**, 2002 WL 1760960, at *6 (S.D.N.Y. July 30, 2002) (internal quotations and citations omitted). In this case, a trier of fact could reasonably find that Fils-Amie acted with the intent to cause Shinn's death. A single stab wound near vital organs can lead to an inference of intent. *See* **People v. Suero**, 654 N.Y.S.2d 114, 115 (1997). Here, according to witnesses' testimonies, Fils-Amie used a single "overhand swing" to stab Shinn after Shinn turned his back to him. Tr. at 24. The location and force of the stab punctured Shinn's lung, nicked a rib, and struck his chest wall. The jury could reasonably infer an intent to cause Shinn's death under these circumstances.

A trier of fact can also find intent based on Fils-Amie's surrounding conduct and statements. Fils-Amie initiated the physical altercation with Shinn at the recording studio, in which Shinn overpowered him in front of friends and colleagues. He sought to get from Battle something to "handle his business with." Tr. at 287-88. He then went home and got a knife from his kitchen. After the stabbing, he told a friend he had "erased" Shinn. Tr. at 252. These statements support the inference that Fils-Amie intended to cause Shinn's death. Together with the circumstances of the

stabbing, they would allow a jury to conclude that the requisite intent was present. I recommend, therefore, that his claim be **DENIED**.

**3.       The Weight of the Evidence in Fils-Amie's Conviction**

Fils-Amie argues that the weight of the evidence does not support his conviction. There is no basis for reviewing the weight of the evidence. Since this is a state law claim grounded in New York Criminal Procedure § 470.15(5), **Garbez**, 2002 WL 1760960 at *8, the Court must defer to the jury's assessment of the weight of the evidence. **Maldonado v. Scully**, 86 F.3d 32, 35 (2d Cir. 1996).

## IV. CONCLUSION

For the foregoing reasons, I recommend that Fils-Amie's petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: August 10, 2006**
**New York, New York**

                                          **Respectfully Submitted,**

                                          *[signature]*

                                          **The Honorable Ronald L. Ellis**
                                          **United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Philemone Fils-Amie
99-A-4216
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Morrie I. Kleinbart
Assistant District Attorney of Counsel
One Hogan Place
New York, New York 10013

9